UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2017 JUL 28 PM 12: 15

CLERK

BY_____
DEPUTY CLERK

W. OWEN JENKINS,                          )
            Plaintiff                )
                               )
       v.                           )
                               )
C3 RACING, INC., d/b/a              )
NEW ENGLAND CLASSIC CAR       )
CO., AND MARC F. EVANS,            )
           Defendants             )
_____)

Case No. 2:17-CV-141

## COMPLAINT

NOW COMES Plaintiff W. Owen Jenkins and hereby alleges against Defendants C3 Racing, Inc., d/b/a New England Classic Car Co., and Marc F. Evans as follows:

## NATURE OF THE ACTION

1.      This is an action against Defendants C3 Racing, Inc., d/b/a New England Classic Car Co. ("C3 Racing"), and its principal member and owner, Marc F. Evans, for breach of express warranties, breaches of the implied covenant of good faith and fair dealing, negligent misrepresentation, fraudulent representation, and consumer fraud under the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, based upon Defendants' unlawful activities as the seller of a certain motor vehicle to Plaintiff in October of 2015.

## THE PARTIES

2.      Plaintiff W. Owen Jenkins is a resident of Essex Junction, County of Chittenden, and State of Vermont.

3.      Defendant C3 Racing is a Connecticut corporation with principal place of business at 1483 Stratford Avenue, Stratford, County of Fairfield, State of Connecticut, and does business as New England Classic Car Co.

4.      Defendant Marc F. Evans is the principal member and owner of Defendant C3 Racing.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the Plaintiff, who is a permanent resident of Vermont, and Defendant C3 Racing, a Connecticut corporation, and Marc F. Evans, a permanent resident of Connecticut.  This Court also has jurisdiction over this action because the unlawful conduct of Defendants alleged herein has sufficient contact within the State of Vermont, and the amount in controversy exceeds $75,000.00.

## PRELIMINARY ALLEGATIONS

6.      Defendant C3 Racing was incorporated in August of 1993 and is in the business of selling an assortment of classic sports cars, vintage and historic racing cars, and various other collectible vehicles.

7.      In furtherance of its business, Defendant C3 Racing advertises extensively on the Internet and, as part of its marketing strategy, offers delivery within the New England region, New York state, and elsewhere for a delivery fee.

8.      In July of 2015, Defendant C3 Racing purchased from Daniel F. Kacher, Jr. ("Mr. Kacher"), now or formerly of Jamaica Plain, Massachusetts, a 1967 MGB motor vehicle, including a removable hardtop ("the car") for the sum of $9,000.00, which car Mr. Kacher had advertised for sale over the Internet on eBay.

9.      Prior to Defendants' purchase of the car and in response to Defendants' inquiry, Mr. Kacher disclosed to Defendants, in writing, certain material facts regarding the condition of the car, including rust on the right door, undercarriage, and rims, and Defendants responded to such disclosures by asking further questions about the car, including more details about undercarriage rust. **Exhibit 1**.

10.     During their negotiations, Mr. Kacher also verbally disclosed to Defendants that the car had rust on the firewall and problems with its transmission.

11.     Upon acquisition of the car, without any repairs or modifications, including removal of any rust or repair of the transmission, Defendants immediately offered it for sale on the Internet without the hard top for the asking price of $17,900.00, more than twice what Defendants had paid for it.

12.     Among other things, Defendants' Internet ad for the car contained the following representations:

> "... a very nice car ... 3,000 miles on rebuilt engine ... new top, new chrome, a wonderful example of the most collectible of MGB's ... 105 mph performance, great handling, sure braking, comfortable ride ...".

**Exhibit 2**.

13.     In response to Defendants' Internet ad, Plaintiff contacted Defendants, asked for details on how Defendants had located and acquired the car, and asked for further details about specific issues with the car, including its overall condition, because Plaintiff did not want to buy a "project" car.

14.     In response to Plaintiff's inquiry for details of how Defendants located and acquired the car, Defendant told Plaintiff that he had seen it advertised on the Internet, then had it inspected by a person acting on their behalf, and finding the car in excellent condition, decided to buy it from Mr. Kacher.

15.     In response to Plaintiff's inquiry for further details about specific issues with the car, Defendants stated that it had only 55,400 original miles, had no rust, was in "show condition", and stated, in writing, that:

> "All of the electrics and mechanicals are in good working order.
>
> ... I took my little magnet, started from the front (on each side) behind the front bumper and moved the magnet along the lower edge of the body, rockers, and fenders, to the rear bumper. It stuck the entire way *making this car (one) of the best bodied early MGBs on the planet.*" (emphasis added)

**Exhibits 3-4.**

16.     Based on Defendants' representations, Plaintiff proceeded to negotiate with Defendants for the purchase of the car.

17.     Plaintiff discussed with Defendants scheduling an appointment to view the car at Defendants' place of business, but Defendants assured Plaintiff that such viewing was not necessary because the condition of the car was excellent and precisely as advertised.

18.     Based upon Defendants' advertising and other representations regarding the condition of the car, the parties agreed that Defendants would provide additional minor upgrades to it for an additional $600.00, for a purchase price of $18,500.00.

19.     In addition to the aforesaid purchase price and as a condition of Plaintiff's purchase from Defendants, Defendants also agreed to deliver the car to Plaintiff in Vermont for an additional $385.00, for a total cost to Plaintiff of $18,885.00.

20.     In reliance on Defendants promises, representations, and warranties, Plaintiff agreed to purchase the car "sight unseen" and without an independent inspection from Defendants for $18,885.00.

21.     Defendants' employee delivered the car to Plaintiff on October 29, 2015 in South Hero, Vermont, gave Plaintiff an invoice for the car, and drove it to Plaintiff's dwelling in such town.  The Bill of Sale contains the following warranty:

> **"... IF WE HAVE MADE ANY PROMISES TO YOU, THE LAW SAYS WE MUST KEEP THEM, EVEN IF WE SELL 'AS IS' ...".**

**Exhibit 5.**

22.     Shortly after delivery, Plaintiff determined and notified Defendants that the car was not in the condition advertised and represented by Defendants and in fact had significant defects with respect to the windshield and transmission, had rust on the body, undercarriage, wheels, and firewall, had hood and trunk latches which would not stay latched, lacked locking mechanisms, did not have a new top (but rather had an older top which had permanent red paint over-spray on it), and had excessive vibration and shaking which limited its maximum driving speed to 55 MPH.

23.     In response to Plaintiff's notification to Defendants about the aforesaid defects, Defendants acknowledged that they knew about the windshield defect but had decided to ship the car out nonetheless without replacing the windshield.

24.     Defendants dismissed all other defects as unimportant "because that's what you get with a 50 year old car".

25.     In November of 2015, shortly before Plaintiff placed the car in storage for the winter, he installed at his own cost a replacement windshield provided by Defendants.

26.     In May of 2016, Plaintiff removed the car from storage.

27.     Upon further inspection, Plaintiff determined and notified Defendants that in addition to the previously reported defects, the car had significant defects with the engine and starter motor, including flywheel, incorrect mileage because of a broken speedometer and cable, water damage to

the interior panels and carpets because the rusted-out firewall could not prevent water infiltration into the cockpit, wiring, brakes, backup fuel pump, front end bushings, and all four wheels.

28.     Upon discovery of the aforesaid defects, Plaintiff asked Defendants to produce the car's full history.

29.     On June 9, 2016, Defendants produced Mr. Kacher's eBay Internet ad which disclosed rust issues on the undercarriage and wheels.

30.     When questioned by Plaintiff about the rust issues, Defendants dismissed them as simply "meaningless". **Exhibit 6.**

31.     Mr. Kacher's eBay Internet ad, and Defendants' inquiry as to information disclosed therein, proves that, contrary to Defendants' representation to Plaintiff, Defendants had not inspected the car before purchasing it from Mr. Kacher and thus had not determined that prior to such purchase, it was in excellent condition.

32.     To the contrary, when purchased from Mr. Kacher, the car was in extremely poor condition and remained in such condition when "flipped" and quickly placed back on the market by Defendants for $17,900.00, approximately twice Defendants' $9,000.00 acquisition cost from Mr. Kacher.

33.     Because of the extremely poor condition of the car, its fair market value at the time of Plaintiff's purchase from Defendants was no more than $2,000.00, not $18,500.00, as a parts car only.

34.     On December 2, 2016, after Defendants rejected Plaintiff's settlement offer, Plaintiff for the first time inspected the car while on a lift and discovered that the chrome bumpers were not new but rather original and coated with rust on the underside, frame damage, extensive rust to the undercarriage and rocker panels, structural damage due to rust, and bondo applied to cover body damage and repair to both rear fenders, and the upper and lower rear panels.

35.     Upon further inspection, Plaintiff determined that the car had been in at least two accidents, damaging the left rear panel and rear valence.

36.     In order to place the car in the advertised condition, Plaintiff has had to have its electrical and mechanical systems repaired and/or replaced and its body and structural components rebuilt, all at substantial costs.

37.     Because of the aforesaid extensive work required, Plaintiff lost use of the car for the entire 2016 six month driving season and one month of the 2017 season.

## COUNT ONE
## BREACH OF EXPRESS WARRANTIES

38.     Plaintiff restates and re-alleges by incorporation the allegations contained in Paragraphs 1 through 37 of this Complaint as if fully set forth herein.

39.     Plaintiff relied on the express warranties made by Defendants in deciding to purchase the car.

40.     Defendants breached Defendants' express warranties.

41.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiff has and will suffer damages in excess of $22,750.00.

## COUNT TWO
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

42.     Plaintiff restates and re-alleges by incorporation the allegations contained in Paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43.     The covenant of good faith and fair dealings is implied in all contracts.

44.     The covenant involves conduct of bad faith as it violates community standards of decency, fairness, and/or reasonableness.

45.     A party must act faithfully to an agreed upon common purpose and consistently with the justified expectations of the other party.

46. The covenant applies to the contract entered into by Plaintiff and Defendants regarding Plaintiff's purchase and Defendants' sale of the car.

47. Defendants acted arbitrarily, unreasonably, in bad faith and not in accordance with their expected contractual performance and prevented Plaintiff from obtaining the benefit of the contract.

48. As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiff has and will suffer damages in excess of $22,750.00.

## COUNT THREE
## NEGLIGENT MISREPRESENTATION

49. Plaintiff restates and re-alleges by incorporation the allegations contained in Paragraphs 1 through 48 of this Complaint as if fully set forth herein.

50. Defendant negligently misrepresented to Plaintiff material facts about the car.

51. Plaintiff justifiably relied on Defendants' negligent misrepresentations when contemplating to purchase the car.

52. As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff has and will suffer damages in excess of $22,750.00.

## COUNT FOUR
## FRAUDULENT MISREPRESENTATION

53. Plaintiff restates and re-alleges by incorporation the allegations contained in Paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54. Defendants intentionally misrepresented material facts about the car to Plaintiff.

55. Plaintiff justifiably relied on Defendants' fraudulent misrepresentations when contemplating to purchase the car.

56. Defendants acted with a knowing, wilful, and/or wanton disregard of their duties of accurate presentation.

57.    As a direct and proximate result of Defendant's fraudulent misrepresentations, Plaintiff has and will suffer damages in excess of $22,750.00.

## COUNT FIVE
## FRAUDULENT CONCEALMENT

58.    Plaintiff restates and re-alleges by incorporation the allegations contained in Paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59.    Defendants intentionally concealed from Plaintiff material facts about the car.

60.    Plaintiff justifiably relied on Defendants' fraudulent concealment when contemplating to purchase the car.

61.    As a direct and proximate result of Defendant's fraudulent concealment, Plaintiff has and will suffer damages in excess of $22,750.00.

## COUNT SIX
## UNFAIR AND DECEPTIVE BUSINESS PRACTICES
## UNDER VERMONT CONSUMER FRAUD ACT -
## 9 V.S.A. § 2453

62.    Plaintiff restates and re-alleges by incorporation the allegations contained in Paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63.    Pursuant to the Vermont Consumer Fraud Act, 9 V.S.A. § 2453, a party violates the Consumer Fraud Act if he or she engages in an unfair or deceptive act or practice in commerce.

64.    An act occurs in commerce if it takes place in the context of an ongoing business in which a defendant holds himself or herself out to the public.

65.    An act is unfair or deceptive where there is:

(a) a representation practice or omission by the defendant that was likely to mislead customers;

(b) the plaintiff interpreted the message reasonably under the circumstances; and

9

(c) the misleading effects were material, meaning that the conduct influenced plaintiff's conduct regarding the transaction.

66.     Therefore, because Defendants engaged in unfair and deceptive acts and practices as outlined in the facts above, all Defendants are liable to Plaintiff for damages resulting from those unfair and deceptive acts and practices.

67.     More particularly, and as more fully described above, Defendants violated the Vermont Consumer Fraud Act by misrepresenting to Plaintiff material facts, to wit:   the true condition of the car, which conduct by Defendants reasonably influenced Plaintiff's decision to buy it.

68.     As a direct and proximate result of these knowing, wilful, and intentional violations of the Vermont Consumer Fraud Act by Defendants, Plaintiff has or will suffer damages in excess of $22,750.00.

69.     Further, because Defendants' actions were knowing, wilful, and intentional, the Court should increase the $18,885.00 purchase price of the car to treble such purchase price or $56,655.00.

70.     In addition, this Court should also order Defendants to pay Plaintiff any attorney's fees and costs required by Plaintiff to prosecute this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in Plaintiff's favor on all counts and award Plaintiff the following additional relief:

(A) award Plaintiff compensatory and consequential damages of no less than $22,750.00, as well as any special damages, resulting from Defendants' wrongdoing;

(B) award Plaintiff punitive damages of no less than $10,000.00;

(C) award Plaintiff treble damages of $56,655.00 pursuant to the Vermont Consumer Fraud Act;

(D) award Plaintiff any attorney's fees and costs which Plaintiff may incur in prosecuting this

action;

(E) award Plaintiff pre-judgment interest; and

(F) award Plaintiff such other relief as the Court deems equitable and just.

DATED at Essex Junction, Vermont, this 28th day of July, 2017.

W. Owen Jenkins
22 Prospect St.
Essex Jct. VT. 05452
802- 876-8207
O. Jenkins 2@myfairpoint.net

11